Case No. 17-MJ-7206-JCB
Case No. 17-MJ-7207-JCB
Case No. 17-MJ-7208-JCB

# AFFIDAVIT OF SPECIAL AGENT ROBERT H. RICE IN SUPPORT OF AN APPLICATION FOR THREE SEARCH WARRANTS

I, Robert H. Rice, state:

## *INTRODUCTION AND AGENT BACKGROUND*

1. I am a law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7), and am empowered by law to conduct investigations and to make arrests.

2. I am a Special Agent with United States Homeland Security Investigations ("HSI"). I have been so employed since May of 2008. I am currently assigned to the Document and Benefit Fraud Task Force, which investigates all manners of fraud as they relate to immigration matters concerning the United States. We also investigate crimes involving legal and illegal immigrants to the United States. Before being employed with HSI, I worked as a United States Border Patrol Agent, Immigration Inspector, Senior Immigration Inspector, and Customs and Border Protection Enforcement Officer. I served for more than twenty years under the above-mentioned positions.

3. I am currently investigating John Doe a/k/a Emmanuel Ampaabeng ("DOE"), whose true identity is unknown to me. I am investigating DOE for Making False Statements on an Immigration Document, in violation of 18 U.S.C. § 1546; Making False Statements to a Government Agency, in violation of 18 U.S.C. § 1001(a)(2); and Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A.

4. I submit this affidavit in support of an application for three warrants under 18 U.S.C. § 2703(a) and Rule 41 of the Federal Rules of Criminal Procedure to search and seize records and data from the following e-mail accounts, as described in the respective Attachments A:

Y0939ae@gmail.com (the "Google Target Account")
ameyaw22@charter.net (the "Charter Target Account")
eampaabeng@blackberry.net (the "Blackberry Target Account")

(together, the "Target Accounts").

5. I have probable cause to believe that the Target Accounts contain evidence, fruits, and instrumentalities of the crimes identified above, as described in Attachment B.

6. Based on the domain name for the Google Target Account, I have probable cause to believe that the account and relevant data are maintained by Google, which, government databases indicate, accepts service of process at:

USLawEnforcement@google.com

as described in the Attachment A for the Google Target Account.

7. Based on the domain name for the Charter Target Account, I have probable cause to believe that the account and relevant data are maintained by Charter Communications, Inc., which, government databases indicate, accepts service of process at:

LEROC@charter.com

as described in the Attachment A for the Charter Target Account.

8. Based on the domain name for the Blackberry Target Account, I have probable cause to believe that the account and relevant data are maintained by BlackBerry Corporation, which, government databases indicate, accepts service of process at:

lawfulaccess@blackberry.com

as described in the Attachment A for the Blackberry Target Account.

9. The facts in this affidavit come from my personal observations and review of records, my training and experience, and information obtained from other agents and witnesses.

2

This affidavit is intended to show merely that there is probable cause for the requested warrants and does not set forth all of my knowledge about this matter.

### *PROBABLE CAUSE TO BELIEVE THAT A FEDERAL CRIME WAS COMMITTED*

10. In or about June 2003, a U.S. citizen named Cassandra Gaines married DOE, who represented himself to be Emmanuel Ampaabeng from Ghana.

11. In or about August 2003, Ms. Gaines filed a Form 485 Petition for Alien Representative with U.S. Citizenship and Immigration Services ("USCIS"), seeking lawful permanent residency for DOE.

12. USCIS interviewed the couple on or about February 23, 2004. DOE was fingerprinted on or about this date. As proof of identity, DOE presented U.S. visa no. 40336226 (the "2001 Visa"). State Department records show that the 2001 Visa was issued to Emmanuel Ampaabeng at the U.S. Consulate in Accra, Ghana, on or about February 14, 2001. As explained below, I have probable cause to believe that the 2001 Visa did not belong to DOE, and that DOE altered it by removing the true visa holder's photograph and replacing it with a photograph of DOE.

13. On or about February 23, 2004, USCIS approved the Petition for Alien Representative, and DOE became a conditional permanent resident. DOE and Ms. Gaines later filed a joint Form I-751 Petition to Remove Conditions on Permanent Residence. On July 10, 2006, USCIS approved this petition and DOE became a lawful permanent resident.

14. On or about August 10, 2006, USCIS photographed DOE and took his fingerprints for purposes of issuing his green card.

15. On or about February 15, 2011, the U.S. Consulate in Accra, Ghana issued U.S.

visa no. 58251756 (the "2011 Visa") to Emmanuel Ampaabeng of Ghana. Mr. Ampaabeng reported on his application that he previously had been issued a U.S. visa on February 15, 2001, and that it had been lost or stolen in 2001. Mr. Ampaabeng was photographed and fingerprinted in connection with the 2011 Visa.

16. On or about May 7, 2014, DOE submitted an Application for Naturalization to USCIS. DOE's application has not been approved because USCIS suspects fraud.

17. The State Department's Kentucky Counselor Center Facial Recognition Team has determined that the photos of Mr. Ampaabeng from his 2001 and 2011 visa applications appear to be of the same person, and that those photos do not match DOE's photo.

18. In addition, a Senior Fingerprint Specialist at the HSI Forensic Laboratory has issued a report finding that the fingerprints taken from DOE in 2004 and 2006 came from the same person, and that the fingerprints taken from Mr. Ampaabeng in connection with his 2011 Visa came from a different person.

### *PROBABLE CAUSE TO BELIEVE THAT THE TARGET ACCOUNTS CONTAIN EVIDENCE, FRUITS, AND INSTRUMENTALITIES*

19. I have probable cause to believe that the Target Accounts and associated data contain evidence, fruits, and instrumentalities of the crimes identified above.

20. In his May 2014 Application for Naturalization, DOE represented that he has a son named Dan Ameyaw-Akumfi Cheremeh, who was born in Ghana in 1999 to DOE's ex-girlfriend.

21. USCIS interviewed DOE on July 31, 2014. During his interview, DOE stated that he wished to change his name to Richard Ameyaw-Akumfi Cheremeh. He swore that he had never used this name. The email address he listed on his naturalization application, however, is cheremehrich@gmail.com. In a subsequent letter to USCIS, DOE admitted that he created this

account in 2008.

22. This Court signed a search warrant on June 14, 2017, for the email account cheremehrich@gmail.com (Case No. 17-MJ-7152-JCB). The documents that Google produced in response to that warrant include a 2010 email from cheremehrich@gmail.com stating, "this is my real name: Richard Nana Kumfi Ameyaw Cheremeh." The documents also contain a 2017 email, subject "Lap top pass word," that lists the three Target Accounts.

23. I believe that the Target Accounts are email addresses used by DOE, that they may help to identify DOE (whether his true identity is Richard Nana Kumfi Ameyaw Cheremeh or some other name), and that they may provide further evidence relevant to how and when DOE appropriated Emmanuel Ampaabeng's identity.

24. On August 23, 2017, Assistant U.S. Attorney ("AUSA") Christine Wichers sent Google a letter requesting under 18 U.S.C. § 2703(f) that the company preserve records associated with the Google Target Account for 90 days.

25. On August 23, 2017, AUSA Wichers sent Charter Communications, Inc. a letter requesting under 18 U.S.C. § 2703(f) that the company preserve records associated with the Charter Target Account for 90 days.

26. On August 23, 2017, AUSA Wichers sent BlackBerry Corporation a letter requesting under 18 U.S.C. § 2703(f) that the company preserve records associated with the Blackberry Target Account for 90 days.

27. I know from DOE's A-file that DOE retained the following immigration attorneys: Alfred B. Taylor (in 2003), Jennifer Genzale (in 2014), and Stella Angwafo (in 2016). It is possible that one or more of the Target Accounts contain privileged communications between

5

DOE and one or more of these attorneys. I will take reasonable steps to ensure that the content of any potentially privileged emails in any of the Target Accounts is not disclosed to me, AUSA Wichers, or any other agent or AUSA who may be assigned to this matter.

### *TECHNICAL BACKGROUND*

28.     E-mail providers generally allow customers to store opened incoming mail and sent mail indefinitely if they choose, subject to a maximum size limit.

29.     E-mail providers also typically maintain electronic records relating to their customers. These records include account application information, account access information, and e-mail transaction information.

30.     Many e-mail providers can also provide the following additional information associated with a subscriber's account: address books; buddy lists; photos, files, data, or other information; and World-Wide Web profiles or homepages.

### *LEGAL AUTHORITY*

31.     The government may obtain both electronic communications and subscriber information from an e-mail provider by obtaining a search warrant. 18 U.S.C. §§ 2703(a), 2703(c)(1)(A).

32.     Any court with jurisdiction over the offense under investigation may issue a search warrant under 18 U.S.C. § 2703(a), regardless of the location of the website hosting company or e-mail provider whose information will be searched. 18 U.S.C. § 2703(b)(1)(A). Furthermore, unlike other search warrants, § 2703 warrants do not require an officer to be present for service or execution of the search warrant. 18 U.S.C. § 2703(g).

33.     If the government obtains a search warrant, there is no requirement that either the

government or the provider give notice to the subscriber. 18 U.S.C. §§ 2703(b)(1)(A), 2703(c)(3).

34. This application seeks warrants to search all responsive records and information under the control of Google, Charter Communications, Inc., and BlackBerry Corporation (together, the "Companies"), all of which are providers subject to the jurisdiction of this Court, regardless of where they have chosen to store such information. The government intends to require the disclosure pursuant to the requested warrants of the contents of wire or electronic communications and any records or other information pertaining to the customers or subscribers if such communication, record, or other information is within the Companies' possession, custody, or control, regardless of whether such communication, record, or other information is stored, held, or maintained outside the United States.[1]

---

[1] It is possible, indeed likely, that at any given time Google stores some portion of the information sought outside of the United States. In recent litigation, Google stipulated to the existence of a network architecture in which some subscriber data responsive to email search warrants is in motion "from one location on Google's network to another as frequently as needed to optimize for performance, reliability, and other efficiencies." *In re Search Warrant No. 16–960–M–01 to Google*, 232 F. Supp. 3d 708, 712 (E.D. Pa. 2017). Google further stated:

> Google stores user data in various locations, some of which are in the United States and some of which are in countries outside the United States. (Stip. ¶ 2.) Some user files may be broken into component parts, and different parts of a single file may be stored in different locations (and, accordingly, different countries) at the same time. (Stip. ¶ 3.) Google operates a state-of-the-art intelligent network that, with respect to some types of data, including some of the data at issue in this case, automatically moves data from one location on Google's network to another as frequently as needed to optimize for performance, reliability, and other efficiencies. (Stip. ¶ 4.) As a result, the country or countries in which specific user data, or components of that data, is located may change. *Id.* It is possible that the network will change the location of data between the time when the legal process is sought and when it is served. *Id.* As such, Google contends that it does not currently have the capability, for all of its services, to determine the location of the data and produce that data to a human user at any particular point in time. (N.T. 1/12/17 at 15–16.)

*Id.* Accordingly, at Google, no matter where account content is stored, it appears to be accessible – based on Google's public stipulations – only from the Northern District of California:

7

## *REQUEST TO SEAL AND PRECLUDE NOTICE TO THE SUBSCRIBER(S)*

35. I request that this application, the warrants, the order, and any related papers be sealed by the Court until such time as the Court pursuant to Local Rule 7.2 directs otherwise. I further request that, pursuant to 18 U.S.C. §§ 2705(b) and 2703(b)(1)(A), the Court order the Companies not to notify any person (including the subscribers or customers to which the materials relate) of the existence of this application, the warrants, the Order, or the execution of the warrants. The government will notify the Companies within 30 days of the conclusion of the criminal investigation described in the application, unless this period is extended by the Court under § 2705(b). After this notification, the Companies shall no longer be bound by the nondisclosure order. The Companies may also inquire with the government about whether non-

---

Only Google personnel in Google's Legal Investigations Support team are authorized to access the content of communications in order to produce it in response to legal process. (Stip. ¶ 5.) All such Google personnel are located in the United States. *Id.* Thus, Google discloses data to the Government by having one of its authorized employees in the United States access the data through its computers located in the United States.

*Id.* at 712-13. This led the court in *In re Search Warrant* to conclude that "there are no Google employees in other countries that can access their foreign-stored data; instead, such data must, as a consequence of their network architecture, be accessed from a Google employee within the United States." *Id.* at 725. The court further held that the government could compel Google to disclose records in its custody and control that are stored outside the United States. *Id.*; *accord In re: Information Associated with one Yahoo email address that is stored at premises controlled by Yahoo*, 2017 WL 706307, at *3 (E.D. Wis. Feb. 21, 2017) ("It is immaterial where the service provider chooses to store its customer's data; what matters is the location of the service provider.").

These facts distinguish the requested warrant from the Stored Communications Act warrant in *Microsoft Corp. v. United States*, 829 F.3d 197 (2d Cir. 2016), where the Second Circuit held that the government cannot enforce a warrant under the Stored Communications Act to require a provider to disclose records in its custody and control that are stored outside the United States.

For these reasons, the government respectfully requests that this warrant apply to all responsive information – including data stored outside the United States – pertaining to the identified account that is in the possession, custody, or control of Google. The government also seeks the disclosure of the physical location or locations where the information is stored.

8

disclosure is still necessary, and the government shall respond promptly to such inquiries.

36. Such an order is justified because notification of the application, the warrants, the Order, or the execution of the warrants could seriously jeopardize the ongoing investigation by giving the subscriber an opportunity to destroy evidence, notify confederates, or flee from prosecution. In particular, putting DOE on notice of a criminal investigation my cause him to notify persons who know his true identity, or may cause him to flee the United States using his Ghanaian passport.

### *FOURTEEN-DAY RULE FOR EXECUTION OF WARRANTS*

37. Federal Rule of Criminal Procedure 41(e)(2)(A),(B) directs the United States to execute a search warrant for electronic evidence within 14 days of the warrant's issuance. If the Court issues the requested warrants, the United States will execute them not by entering the premises of the Companies, as with conventional warrants, but rather by serving copies of the warrants on the Companies and awaiting their production of the requested data. This practice is approved in 18 U.S.C. § 2703(g),[2] and it is generally a prudent one because it minimizes the government's intrusion onto Internet companies' physical premises and the resulting disruption of their business practices.

38. Based on my training and experience and that of other law enforcement, I understand that e-mail providers sometimes produce data in response to a search warrant outside

---

[2] Section 2703(g) provides that "[n]otwithstanding section 3105 of this title, the presence of an officer shall not be required for service or execution of a search warrant issued in accordance with this chapter requiring disclosure by a provider of electronic communications service or remote computing service of the contents of communications or records or other information pertaining to a subscriber to or customer of such service."

the 14-day period set forth in Rule 41 for execution of a warrant. I also understand that e-mail providers sometimes produce data that was created or received after this 14-day deadline ("late-created data").

39.     The United States does not ask for this extra data or participate in its production.

40.     Should any of the Companies produce late-created data in response to this warrant, I request permission to view all late-created data, including subscriber, IP address, logging, and other transactional data, without a further order of the Court. This information could also be obtained by grand jury subpoena or an order under 18 U.S.C. § 2703(d), neither of which contains a 14-day time limit. However, law enforcement personnel will seek to avoid reviewing any late-created data that was created by or received by the account-holder(s), such as e-mail, absent a follow-up warrant.

41.     For these reasons, I request that the Court approve the procedures in Attachment B, which sets forth these limitations.

## *CONCLUSION*

42. Based on the information described above, I have probable cause to believe that records and data from the Target Accounts (as described in the respective Attachments A) contain evidence, fruits, and instrumentalities of the above-listed crimes (as described in Attachment B).

43. The procedures for copying and reviewing the relevant records are set out in Attachment B to the search warrants.

Respectfully submitted,

Robert H. Rice  
Special Agent  
Homeland Security Investigations

Subscribed and sworn to before me on August 25, 2017.

HON. JENNIFER C. BOAL  
United States Magistrate Judge

**ATTACHMENT A TO THE GOOGLE WARRANT**

The premises to be searched and seized are (1) the e-mail account identified as Y0939ae@gmail.com ("the target account"), (2) other user-generated data stored with that account, and (3) associated subscriber, transactional, user connection information associated with the account as described further in Attachment B. This information is maintained by Google ("the company"), which accepts service of process at: USLawEnforcement@google.com.

**ATTACHMENT A TO THE CHARTER WARRANT**

The premises to be searched and seized are (1) the e-mail account identified as ameyaw22@charter.net ("the target account"), (2) other user-generated data stored with that account, and (3) associated subscriber, transactional, user connection information associated with the account as described further in Attachment B. This information is maintained by Charter Communications, Inc. ("the company"), which accepts service of process at:

LEROC@charter.com.

**ATTACHMENT A TO THE BLACKBERRY WARRANT**

The premises to be searched and seized are (1) the e-mail account identified as eampaabeng@blackberry.net ("the target account"), (2) other user-generated data stored with that account, and (3) associated subscriber, transactional, user connection information associated with the account as described further in Attachment B. This information is maintained by BlackBerry Corporation ("the company"), which accepts service of process at: lawfulaccess@blackberry.com.

## ATTACHMENT B

I.  **Search Procedure**

    A.    Within fourteen days after the search warrant is issued, the warrant will be served on the company, which will identify the accounts and files to be searched, as described in Section II below.

    B.    The company will then create an exact electronic duplicate of these accounts and files ("the account duplicate").

    C.    The company will provide the account duplicate to law enforcement personnel.

    D.    Law enforcement personnel will then search the account duplicate for the records and data to be seized, which are described in Section III below.

    E.    Law enforcement personnel may review the account duplicate, even if it is produced more than 14 days after the warrant issues, subject to the following limitations. If data was created after fourteen days from the warrant's issue ("late-created data") law enforcement personnel may view all late-created data, including subscriber, IP address, logging, and other transactional data, without a further order of the Court. Law enforcement personnel will seek to avoid reviewing any late-created data that was created by or received by the account-holder(s), absent a follow-up warrant.

II.  **Accounts and Files to Be Copied by Company Personnel**

    A.    All data files associated with the target account within the possession, custody, or control of the company, regardless of whether such information is stored, held or maintained inside or outside of the United States, including:

1. The contents of all email, whether draft, deleted, sent, or received;

2. The contents of all text or instant messages;

3. The contents of all electronic data files, whether word-processing, spreadsheet, image, video, or any other content;

4. The contents of all calendar data;

5. Lists of friends, buddies, contacts, or other subscribers;

6. Records pertaining to communications between the company and any person regarding these accounts and any e-mail accounts associated with those addresses, including contacts with support services and records of actions taken; and

7. For all information required to be disclosed pursuant to this warrant, the physical location or locations where the information is stored.

B. All subscriber and transactional records for the target account and any associated e-mail accounts, including:

1. Subscriber information for these and any associated e-mail accounts:

    a. Name(s) and account identifiers;

    b. Address(es);

    c. Records of session times and durations;

    d. Length of service (including start date) and types of service utilized;

    e. Telephone instrument number of other subscriber number or identity, including any temporary assigned network address;

    f. The means and source of payment for such service (including any

                credit card or bank account number); and

        g.        The Internet Protocol address used by the subscriber to register the account or otherwise initiate service.

  2.    User connection logs for any connections to or from these and any associated e-mail accounts, including:

        a.        Connection time and date;

        b.        Disconnect time and date;

        c.        The IP address that was used when the user connected to the service;

        d.        Source and destination of any e-mail messages sent from or received by the account, and the date, time, and length of the message; and

        e.        Any address to which e-mail was or is to be forwarded from the account or e-mail address.

**III.**    **Records and Data to be Searched and Seized by Law Enforcement Personnel**

  A.    Evidence, fruits, or instrumentalities of violations of 18 U.S.C. §§ 1001(a)(2), 1028A, and 1546, including records through the present relating to:

    1.    All communications to, from, or about Dan Cheremeh, Richard Cheremeh, or Richard Nana Kumfi Ameyaw Cheremeh;

    2.    The identity of the person(s) who has owned or operated the target account or any associated e-mail accounts;

    3.    The existence and identity of any co-conspirators;

    4.    The travel or whereabouts of the person or persons who have owned or operated the target account or any associated e-mail accounts;

       5.     The identity, location, and ownership of any computers used to access these e-mail accounts;

       6.     Other e-mail or Internet accounts providing Internet access or remote data storage;

       7.     The existence or location of physical media storing electronic data, such as hard drives, CD- or DVD-ROMs, or thumb drives; and

       8.     The existence or location of paper printouts of any data from any of the above.

B.     All of the subscriber, transactional, and logging records described in Section II(B).